# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| 655 Third Avenue | 910 Franklin Avenue |
| --- | --- |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

February 25, 2020

*Via ECF and First-Class Mail*
The Honorable Barbara Moses
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:      <u>*Aquino v. Joseph's Auto Center, Inc., et al.*</u>, <u>Docket No.: 1:18-cv-02009 (BCM)</u>

Dear Judge Moses:

      As the Court knows, we represent the Plaintiff, Eddy Aquino ("Plaintiff"), in this wage and hour action against his former employers, Joseph's Auto Center, Inc. ("JAC") and Carl Bucalo (together, where appropriate, as "Defendants"), ("Defendants," together with Plaintiff, as "the Parties"), arising under, *inter alia*, the overtime and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"). As we advised in our letter of January 31, 2020, the Parties have reached a settlement in principle following many months of negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiff's FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

---

[1] Plaintiff also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement."). For the avoidance of doubt, and notwithstanding the foregoing, the Parties confirm that the <u>*only*</u> agreement between them is the Agreement attached hereto as Exhibit A.

**I.      Procedural History and Settlement Agreement Terms**

On March 6, 2018, Plaintiff filed this action on behalf of himself and all others similarly-situated, against Defendants - - an auto-body shop in the Bronx and its owner - - for whom he worked as a salaried paint mixer / car detailer from September 2015 through September 21, 2017. Plaintiff seeks unpaid wages based on, *inter alia*, Defendants' alleged policy of failing to pay him overtime compensation for any hours worked in excess of forty each week.  Further, Plaintiff alleges that after complaining about not receiving his overtime wages, Defendants retaliated by terminating his employment.  On May 16, 2018, the Parties consented to this Court's jurisdiction for all purposes. ECF # 12. Defendants then filed their Answer on June 14, 2018, denying Plaintiff's material allegations. ECF # 15.  The Parties then appeared before Your Honor on June 25, 2018 for an initial conference, at which time the Court entered a scheduling order and the Parties proceeded with discovery.  To that end, the Parties exchanged document requests and interrogatories, responded to the same, and conducted a Federal Rule of Civil Procedure 30(b)(6) deposition of Defendant JAC's corporate designee, which was Defendant Bucalo.  After cutting short that deposition due to JAC's alleged insufficient preparation of Bucalo as the corporate designee, Defendants sought leave to substitute their counsel on February 15, 2019, ECF # 30, which this Court granted on February 19, 2019, ECF # 32.  The Parties then agreed to stipulate to conditionally certify the FLSA Section 216(b) collective in this matter, and after conducting a teleconference with the Court on April 11, 2018, wherein Your Honor directed the Parties to revise the proposed notice of pendency, the Court conditionally certified the collective and approved the Parties' revised notice on April 19, 2019. ECF # 45.  Plaintiff then disseminated notice of pendency of this action to nine individuals on May 25, 2019.  No opt-ins joined the action.

Following the close of the opt-in period, the Parties spent four months negotiating a potential resolution of this matter.  When negotiations faltered in December 2019, the Parties met and conferred on any outstanding discovery and rescheduled remaining depositions for a second 30(b)(6) representative and for Plaintiff.  Then, on the eve of Defendant JAC's second 30(b)(6) deposition, the Parties reengaged in settlement discussions, and were ultimately able to reach a resolution after approximately one more month of negotiating.  As a result, the Parties agreed on a total settlement of $52,500.00 ("Settlement Sum"), which will be distributed as follows:

- <u>Plaintiff Aquino</u>: the net amount (excluding attorneys' fees and costs) of $34,277.28; *and*

- <u>Borrelli & Associates, P.L.L.C.</u>: $18,222.72, representing litigation costs ($1,084.08) and attorneys' fees ($17,138.64), the latter of which is one-third of the *net* Settlement Sum *after* deduction of costs.

The Settlement Sum will be paid in a single payment by March 16, 2020, assuming that the Court has approved the Parties' agreement by such date.  For the reasons described below,

Plaintiff, on behalf of all Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances and requests that the Court approve it.

**II.     The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Pinguil v. We Are All Frank, Inc.*, 2018 WL 2538218, at *2 (S.D.N.Y. May 21, 2018) (Moses, *J.*) (applying *Wolinsky* factors on a *Cheeks* approval motion). The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

**A.     *Range of Possible Recovery***

Here, Plaintiff alleges that throughout his employment from on or around September 15, 2015 through September 21, 2017, he worked forty-five hours per week, yet Defendants paid him a flat salary of $600 to $650 per week (depending on his period of employment) without overtime pay for his hours worked beyond his first forty each week. As part of the discovery in case, Defendants produced Plaintiff's entire payroll history, as well as hand-written schedules and time records reflecting the hours that Defendants contend that Plaintiff worked. These records, in Defendants' view, specifically identified instances where Plaintiff worked fewer than forty hours in a week based on, *inter alia*, sick days, arriving late after the start of his shift, or leaving early before the end of his shift. Defendants argued that these records reflected that Plaintiff worked little-to-no overtime hours, and that liability, if any, would be *de minimis*. Plaintiff disputed the accuracy of these records, arguing that he never received the time records in question and had no way of confirming whether or not they were contemporaneous or if they accurately reflected Plaintiff's actual working time.

In light of the Parties' disputed account of Plaintiff's working time, Plaintiff calculated his damages based on his own recollection of what he claimed to be his actual forty-five hour per week schedule over the maximum three-year FLSA time period at issue in this case, *see* 29 U.S.C. § 255(a), amounting to $12,069.64 if calculated using a time-and-one-half calculation (i.e., assuming that Plaintiff's salary was solely intended to compensate him for his first forty hours, and not for all hours worked). Defendants continued to maintain that they paid Plaintiff properly, and that even were Plaintiff able to successfully dispute Defendants' time records, damages - - if any - - would only be calculated using a half-rate analysis, because in Defendants' view it was clear that Plaintiff's salary was intended to compensate him for *all* hours, as demonstrated by the fact that his hours fluctuated (according to Defendants) and that he routinely received his fixed salary regardless of same. Thus, if Defendants' damages argument prevailed, Plaintiff's overtime damages would amount to merely $1,953.57. Moreover, Defendants pointed to the fact that none of the other nine current and former employees to whom Plaintiff disseminated notice joined this matter as further evidence that Defendants' pay practices were lawful and appropriate. If true, Plaintiff would potentially have no damages at all, or perhaps *de minimis* violations for some weeks, which would likely not trigger any liquidated damages, which Defendants contend they do not owe because they say that they acted in good faith.

As to Plaintiff's retaliation damages, Defendants vehemently denied that Plaintiff's employment was terminated for any improper reason, instead claiming that Plaintiff was routinely late and that he quit his job on his own volition after repeated no-call, no-show workdays in September 2017. Plaintiff, in contrast, argued that he complained about not being paid for his overtime work, and that Defendants responded by telling him that there was "no work for you" after he raised his complaints, thereby terminating his employment unlawfully. Plaintiff's alleged lost wages - - from his termination until January 15, 2019 when he obtained a new job - - amounted to an estimated maximum of $41,142.86. However, Defendants argued that Plaintiff did not adequately mitigate his alleged loss. Plaintiff also claimed entitlement to garden variety emotional distress damages as a result of this claim.

Accordingly, the range of recovery in this matter varied widely. Indeed, a realistic range of recovery for Plaintiff's FLSA overtime claims was between zero and $3,907.14 if calculated under a "half-rate" theory of damages, and between zero and $24,139.29 if calculated under a "time and one-half" theory of damages - - both of which are inclusive of liquidated damages. When combining these figures with Plaintiff's potential FLSA retaliation damages, Plaintiff's range of recovery for *all* FLSA claims was between zero and an absolute maximum of $53,212.50 in actual economic damages, with the potential of this amount being doubled for liquidated damages, plus the potential for emotional distress. Under this proposed settlement, after deducting for attorneys' fees and expenses, Plaintiff would receive a total of $34,277.28.

4

Given the wide range of recovery under the various scenarios described above, and based on his distribution under the Parties' Agreement, after deduction of attorneys' fees and costs, the Parties submit that the outcome here is reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.  *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, depositions were set to conclude by the end of March 2020, followed assuredly by dispositive motion practice. Thereafter, if motion practice did not resolve the matter, the Parties were to proceed to a trial on the merits for most of the claims given the Parties' hotly disputed issues of material fact with respect to Plaintiff's alleged hours worked and Defendants' defenses thereto, as well as the circumstances surrounding the end of Plaintiff's employment with Defendants. At bottom, even if successful at the summary judgment and trial stages, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiff understands that if he were to continue with the litigation - - even if successful - - he may never receive more money than what Defendants are now offering, particularly, again, when considering the lack of interest from the putative collective in participating in this matter. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks only expected to substantially rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C.  *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several months, and concluded only after more than a year of discovery. There was no fraud or collusion here.

Furthermore, the Agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in the Agreement is limited to any wage and hour claims that Plaintiff has or may have had against Defendants, as well as any claims arising out of the cessation of his employment since Plaintiff asserted a claim for retaliation, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Pinguil*, 2018 WL 2538218, at *3-4 (Moses, *J.*); *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL

5

4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180-81 (S.D.N.Y. March 30, 2015).  Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 96 F. Supp. 3d at 177-78); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks*, 796 F.3d at 206) (this Court declining to approve FLSA settlement containing a confidentiality provision).

### D.     *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336).  When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $17,138.64, which amounts to one-third of the total net Settlement Sum.  While the Second Circuit has very recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher v. SD Protection Inc.*, Dkt. No. 18-25040-cv, *Slip Op.* at 20 (2d Cir. Feb. 4, 2020) (emphasis added), Plaintiff notes that courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total settlement, which is all that Plaintiff's counsel seeks here. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.

2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee").  In order to calculate the lodestar check, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).  As of February 7, 2020, before finalizing this motion, Plaintiff's counsel has billed over 131 hours on this file, which after exercising billing judgment and adjusting to 96.1 hours amounts to a total lodestar fee of $24,414.00, an amount obviously more than the $17,138.64 fee that counsel seeks.  This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $275.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter; $200.00 per hour for a junior associate working on the matter; and $125.00 per hour for paralegals and law clerks.  Courts routinely approve these rates in similar cases. *See, e.g., In re Murray ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45 (E.D.N.Y. Dec. 13, 2019) ("The thorough and well-reasoned presentation of counsel with regard to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates").  Plaintiff's counsel's contemporaneous billing records are attached hereto as **Exhibit B**.

Finally, Plaintiff's counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $1,084.08, comprised of: the initial filing fee; service of process fees; postage; research; PACER fees; travel; translation services; and copying.  Plaintiff's counsel's expense report reflecting these costs is attached hereto as **Exhibit C**.

Accordingly, Plaintiff's counsel's request for a total of $18,222.72 is reasonable.

### III. Conclusion

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, and that the Court retain jurisdiction to enforce the terms of the Parties' Agreement.  The Parties have attached a proposed order of dismissal as an exhibit to their Agreement for the Court's convenience.  Should the Court decline to endorse this order and issue its own from scratch, the Parties respectfully request that any such order provide that this action is dismissed with prejudice and that the Court is retaining jurisdiction for enforcement purposes.

We thank the Court for its time and attention to this matter.

                                            Respectfully submitted,

                                            Michael R. Minkoff, Esq.
                                                      *For the Firm*

Copies to:    Counsel for Defendants (via ECF)